**F I L E D**
CLERK, U.S. DISTRICT COURT

Sep 30 2022

CENTRAL DISTRICT OF CALIFORNIA
BY: _____ MC _____ DEPUTY

1  STEPHANIE S. CHRISTENSEN
   Acting United States Attorney
2  SCOTT M. GARRINGER
   Assistant United States Attorney
3  Chief, Criminal Division
   BYRON R. TUYAY (Cal. Bar No. 308049)
4  Assistant United States Attorney
   Riverside Branch Office
5       United States Attorney's Office
        3403 Tenth Street, Suite 200
6       Riverside, California 92501
        Telephone: (951) 276-6230
7       Facsimile: (951) 276-6202
        E-mail:    Byron.tuyay@usdoj.gov
8
   Attorneys for Plaintiff
9  UNITED STATES OF AMERICA

10                    UNITED STATES DISTRICT COURT

11              FOR THE CENTRAL DISTRICT OF CALIFORNIA

12  UNITED STATES OF AMERICA,        No. CR 5:22-cr-00230-JFW

13              Plaintiff,           PLEA AGREEMENT FOR DEFENDANT
                                     KENNETH ANDREW LATHON
14                  v.

15  KENNETH ANDREW LATHON,

16              Defendant.

17

18       1.   This constitutes the plea agreement between Kenneth Andrew

19  Lathon ("defendant") and the United States Attorney's Office for the

20  Central District of California (the "USAO") in the investigation of

21  fraudulent Unemployment Insurance ("UI") benefits claims filed with

22  the California Employment Development Department ("EDD") from in or

23  about February 2020 through March 23, 2021, and the investigation of

24  firearms seized from defendant's residence on or about March 23,

25  2021.  This agreement is limited to the USAO and cannot bind any

26  other federal, state, local, or foreign prosecuting, enforcement,

27  administrative, or regulatory authorities.

28

1                      <u>DEFENDANT'S OBLIGATIONS</u>

2          2.   Defendant agrees to:

3          a.   Give up the right to indictment by a grand jury and,

4    at the earliest opportunity requested by the USAO and provided by the

5    Court, appear and plead guilty to counts 1, 2, and 3 of the

6    information in the form attached to this agreement as Exhibit A or a

7    substantially similar form, which charges defendant with conspiracy

8    to commit mail and wire fraud in violation of 18 U.S.C. § 1349,

9    aggravated identity theft in violation of 18 U.S.C. § 1028A(a)(1),

10   and being a felon in possession of firearms in violation of 18 U.S.C.

11   § 922(g)(1).

12         b.   Not contest facts agreed to in this agreement.

13         c.   Abide by all agreements regarding sentencing contained

14   in this agreement.

15         d.   Appear for all court appearances, surrender as ordered

16   for service of sentence, obey all conditions of any bond, and obey

17   any other ongoing court order in this matter.

18         e.   Not commit any crime; however, offenses that would be

19   excluded for sentencing purposes under United States Sentencing

20   Guidelines ("U.S.S.G." or "Sentencing Guidelines") § 4A1.2(c) are not

21   within the scope of this agreement.

22         f.   Be truthful at all times with the United States

23   Probation and Pretrial Services Office and the Court.

24         g.   Pay the applicable special assessments at or before

25   the time of sentencing unless defendant has demonstrated a lack of

26   ability to pay such assessments.

27         3.   Defendant further agrees:

28

a.   To forfeit all right, title, and interest in and to any and all monies, properties, and/or assets of any kind, derived from or acquired as a result of the illegal activity to which defendant is pleading guilty, specifically including, but not limited to the following items seized by law enforcement on March 23, 2021:

i.   a Remington, Mohawk 10C, .22 caliber rifle bearing serial number 2452183;

ii.  a Mossberg, 500 ATP, 12-gauge shotgun with an attached ammunition saddle;

iii. a privately manufactured AR-style rifle bearing no serial number; and

iv.  Approximately $73,890 in U.S. Currency, which defendant agrees constitutes traceable proceeds of the 18 U.S.C. § 1349 violation (count one) (collectively, "Forfeitable Property").

b.   To the Court's entry of an order of forfeiture at or before sentencing with respect to the Forfeitable Property and to the forfeiture of the Forfeitable Property.

c.   To take whatever steps are necessary to pass to the United States clear title to the Forfeitable Property, including, without limitation, the execution of a consent decree of forfeiture and the completing of any other legal documents required for the transfer of title to the United States.

d.   Not to contest any administrative forfeiture proceedings or civil judicial proceedings commenced against the Forfeitable Assets.  If defendant submitted a claim and/or petition for remission for all or part of the Forfeitable Property on behalf of himself or any other individual or entity, defendant shall and hereby does withdraw any such claims or petitions, and further agrees

3

to waive any right he may have to seek remission or mitigation of the forfeiture of the Forfeitable Property.  Defendant further waives any and all notice requirements of 18 U.S.C. § 983(a)(1)(A).

e.   Not to assist any other individual in any effort falsely to contest the forfeiture of the Forfeitable Property.

f.   Not to claim that reasonable cause to seize the Forfeitable Assets was lacking.

g.   To prevent the transfer, sale, destruction, or loss of any and all assets described above to the extent defendant has the ability to do so.

h.   To fill out and deliver to the USAO a completed financial statement listing defendant's assets on a form provided by the USAO.

i.   That forfeiture of Forfeitable Assets shall not be counted toward satisfaction of any special assessment, fine, restitution, costs, or other penalty the Court may impose.

<u>THE USAO'S OBLIGATIONS</u>

4.   The USAO agrees to:

a.   Not contest facts agreed to in this agreement.

b.   Abide by all agreements regarding sentencing contained in this agreement.

c.   At the time of sentencing, provided that defendant demonstrates an acceptance of responsibility for the offenses up to and including the time of sentencing, recommend a two-level reduction in the applicable Sentencing Guidelines offense level, pursuant to U.S.S.G. § 3E1.1, and recommend and, if necessary, move for an additional one-level reduction if available under that section.

1    d. Recommend that defendant be sentenced to a term of
2 imprisonment no higher than the low end of the applicable Sentencing
3 Guidelines range, provided that the offense level used by the Court
4 to determine that range is 20 or higher and provided that the Court
5 does not depart downward in offense level or criminal history
6 category.  For purposes of this agreement, the low end of the
7 Sentencing Guidelines range is that defined by the Sentencing Table
8 in U.S.S.G. Chapter 5, Part A.

<u>NATURE OF THE OFFENSES</u>

5. Defendant understands that for defendant to be guilty of
the crime charged in count one, that is, conspiracy, in violation of
18 U.S.C. § 1349, the following must be true: (1) beginning no later
than on or about February 2, 2020 and continuing through at least on
or about March 23, 2021, there was an agreement between two or more
persons to commit mail fraud and wire fraud; (2) defendant became a
member of the conspiracy knowing of at least one of its objects and
intending to help accomplish it; and (3) one of the members of the
conspiracy performed at least one overt act for the purpose of
carrying out the conspiracy.

6. Defendant understands that for defendant to be guilty of
the crime charged in count two, that is, aggravated identity theft,
in violation of 18 U.S.C. § 1028A(a)(1), the following must be true:
(1) defendant knowingly possessed or used without legal authority a
means of identification of another person; (2) defendant knew that
the means of identification belonged to a real person; and (3)
defendant did so during and in relation to a conspiracy to commit
mail fraud and wire fraud as charged in count one of the Information.

7. Defendant understands that for defendant to be guilty of the crime charged in count three, that is, being a felon in possession of firearms, in violation of 18 U.S.C. § 922(g)(1), the following must be true: (1) defendant knowingly possessed the firearms alleged in count three of the Information; (2) the firearms had been shipped or transported from one state to another or between a foreign nation and the United States; (3) at the time defendant possessed the firearms, the defendant had been convicted of a felony, which is a crime punishable by imprisonment for a term exceeding one year; and (4) at the time defendant possessed the firearms, the defendant knew he had been convicted of a felony.

<u>PENALTIES AND RESTITUTION</u>

8. Defendant understands that the statutory maximum sentence that the Court can impose for a violation of 18 U.S.C. § 1349, as charged in count one of the Information is: 20 years' imprisonment; a 3-year period of supervised release; a fine of $250,000 or twice the gross gain or gross loss resulting from the offense, whichever is greatest; and a mandatory special assessment of $100.

9. Defendant understands that the statutory mandatory sentence that the Court must impose for a violation of 18 U.S.C. § 1028A, as charged in count two of the Information, is a two-year term of imprisonment, which must run consecutive to any other sentence of imprisonment, and a mandatory special assessment of $100.

10. Defendant understands that the statutory maximum sentence that the Court can impose for a violation of 18 U.S.C. § 922(g)(1), as charged in count three of the Information is: 10 years' imprisonment; a 3-year period of supervised release; a fine of $250,000 or twice the gross gain or gross loss resulting from the

offense, whichever is greatest; and a mandatory special assessment of $100.

11.  Defendant understands, therefore, that the total maximum sentence for all offenses to which defendant is pleading guilty is: 32 years' imprisonment; a 3-year period of supervised release; a fine of $750,000 or twice the gross gain or gross loss resulting from the offenses, whichever is greatest; and a mandatory special assessment of $300.

12.  Defendant understands that supervised release is a period of time following imprisonment during which defendant will be subject to various restrictions and requirements.  Defendant understands that if defendant violates one or more of the conditions of any supervised release imposed, defendant may be returned to prison for all or part of the term of supervised release authorized by statute for the offense that resulted in the term of supervised release, which could result in defendant serving a total term of imprisonment greater than the statutory maximum stated above.

13.  Defendant understands that defendant will be required to pay full restitution to the victims of the offenses to which defendant is pleading guilty.  Defendant agrees that, in return for the USAO's compliance with its obligations under this agreement, the Court may order restitution to persons other than the victims of the offenses to which defendant is pleading guilty and in amounts greater than those alleged in the counts to which defendant is pleading guilty.  In particular, defendant agrees that the Court may order restitution to any victim of any of the following for any losses suffered by that victim as a result: (a) any relevant conduct, as defined in U.S.S.G. § 1B1.3, in connection with the offenses to which

defendant is pleading guilty; and (b) any charges not prosecuted pursuant to this agreement as well as all relevant conduct, as defined in U.S.S.G. § 1B1.3, in connection with those charge.  The parties currently believe that the applicable amount of restitution is approximately $998,630, to be paid to victim California EDD, but recognize and agree that this amount could change based on facts that come to the attention of the parties prior to sentencing.

14.  Defendant understands that, by pleading guilty, defendant may be giving up valuable government benefits and valuable civic rights, such as the right to vote, the right to possess a firearm, the right to hold office, and the right to serve on a jury. Defendant understands that he is pleading guilty to a felony and that it is a federal crime for a convicted felon to possess a firearm or ammunition.  Defendant understands that the convictions in this case may also subject defendant to various other collateral consequences, including but not limited to revocation of probation, parole, or supervised release in another case and suspension or revocation of a professional license.  Defendant understands that unanticipated collateral consequences will not serve as grounds to withdraw defendant's guilty pleas.

15.  Defendant and his counsel have discussed the fact that, and defendant understands that, if defendant is not a United States citizen, the convictions in this case makes it practically inevitable and a virtual certainty that defendant will be removed or deported from the United States.  Defendant may also be denied United States citizenship and admission to the United States in the future. Defendant understands that while there may be arguments that defendant can raise in immigration proceedings to avoid or delay

removal, removal is presumptively mandatory and a virtual certainty in this case.  Defendant further understands that removal and immigration consequences are the subject of a separate proceeding and that no one, including his attorney or the Court, can predict to an absolute certainty the effect of his convictions on his immigration status.  Defendant nevertheless affirms that he wants to plead guilty regardless of any immigration consequences that his/her pleas may entail, even if the consequence is automatic removal from the United States.

FACTUAL BASIS

16.  Defendant admits that defendant is, in fact, guilty of the offenses to which defendant is agreeing to plead guilty.  Defendant and the USAO agree to the statement of facts provided in Exhibit B attached hereto and agree that this statement of facts is sufficient to support pleas of guilty to the charges described in this agreement and to establish the Sentencing Guidelines factors set forth in paragraph 18 below but is not meant to be a complete recitation of all facts relevant to the underlying criminal conduct or all facts known to either party that relate to that conduct.

SENTENCING FACTORS

17.  Defendant understands that in determining defendant's sentence the Court is required to calculate the applicable Sentencing Guidelines range and to consider that range, possible departures under the Sentencing Guidelines, and the other sentencing factors set forth in 18 U.S.C. § 3553(a).  Defendant understands that the Sentencing Guidelines are advisory only, that defendant cannot have any expectation of receiving a sentence within the calculated Sentencing Guidelines range, and that after considering the

Sentencing Guidelines and the other § 3553(a) factors, the Court will be free to exercise its discretion to impose any sentence it finds appropriate between the mandatory minimum and up to the maximum set by statute for the crimes of conviction.

18. Defendant and the USAO agree to the following applicable Sentencing Guidelines factors:

| | | |
|---|---|---|
| Base Offense Level: | 7 | U.S.S.G. § 2B1.1(a)(1) |
| Loss greater than $550,000 but less than $1,500,000 | +14 | U.S.S.G. § 2B1.1(b)(1)(H) |
| More than 10 victims: | +2 | U.S.S.G. § 2B1.1(b)(2)(A) |

Defendant and the USAO reserve the right to argue that additional specific offense characteristics, adjustments, and departures under the Sentencing Guidelines are appropriate.  Defendant understands that the Court must sentence defendant to a term of two years imprisonment on count three, which must run consecutive to any term of imprisonment imposed for counts one and four.

19. Defendant understands that there is no agreement as to defendant's criminal history or criminal history category.

20. Defendant and the USAO reserve the right to argue for a sentence outside the sentencing range established by the Sentencing Guidelines based on the factors set forth in 18 U.S.C. § 3553(a)(1), (a)(2), (a)(3), (a)(6), and (a)(7).

<u>WAIVER OF CONSTITUTIONAL RIGHTS</u>

21. Defendant understands that by pleading guilty, defendant gives up the following rights:

  a. The right to persist in a plea of not guilty.

  b. The right to a speedy and public trial by jury.

c.    The right to be represented by counsel -- and if necessary have the Court appoint counsel -- at trial.  Defendant understands, however, that, defendant retains the right to be represented by counsel -- and if necessary have the Court appoint counsel -- at every other stage of the proceeding.

d.    The right to be presumed innocent and to have the burden of proof placed on the government to prove defendant guilty beyond a reasonable doubt.

e.    The right to confront and cross-examine witnesses against defendant.

f.    The right to testify and to present evidence in opposition to the charges, including the right to compel the attendance of witnesses to testify.

g.    The right not to be compelled to testify, and, if defendant chose not to testify or present evidence, to have that choice not be used against defendant.

h.    Any and all rights to pursue any affirmative defenses, Fourth Amendment or Fifth Amendment claims, and other pretrial motions that have been filed or could be filed.

<u>WAIVER OF APPEAL OF CONVICTION</u>

22.  Defendant understands that, with the exception of an appeal based on a claim that defendant's guilty pleas were involuntary, by pleading guilty defendant is waiving and giving up any right to appeal defendant's convictions on the offenses to which defendant is pleading guilty.  Defendant understands that this waiver includes, but is not limited to, arguments that the statutes to which defendant is pleading guilty are unconstitutional, and any and all claims that

the statement of facts provided herein is insufficient to support defendant's pleas of guilty.

<u>LIMITED MUTUAL WAIVER OF APPEAL OF SENTENCE</u>

23.   Defendant agrees that, provided the Court imposes a total term of imprisonment on all counts of conviction of no more than 70 months, defendant gives up the right to appeal all of the following: (a) the procedures and calculations used to determine and impose any portion of the sentence; (b) the term of imprisonment imposed by the Court; (c) the fine imposed by the Court, provided it is within the statutory maximum; (d) to the extent permitted by law, the constitutionality or legality of defendant's sentence, provided it is within the statutory maximum; (e) the amount and terms of any restitution order, provided it requires payment of no more than $998,630; (f) the term of probation or supervised release imposed by the Court, provided it is within the statutory maximum; and (g) any of the following conditions of probation or supervised release imposed by the Court: the conditions set forth in Second Amended General Order 20-04 of this Court; the drug testing conditions mandated by 18 U.S.C. §§ 3563(a)(5) and 3583(d); and the alcohol and drug use conditions authorized by 18 U.S.C. § 3563(b)(7).

24.   The USAO agrees that, provided (a) all portions of the sentence are at or above the statutory minimum and at or below the statutory maximum specified above and (b) the Court imposes a term of imprisonment of no less than 61 months, the USAO gives up its right to appeal any portion of the sentence, with the exception that the USAO reserves the right to appeal the following: (a) the amount of restitution ordered if that amount is less than $998,630.

12

1

RESULT OF WITHDRAWAL OF GUILTY PLEA

2     25.  Defendant agrees that if, after entering guilty pleas

3  pursuant to this agreement, defendant seeks to withdraw and succeeds

4  in withdrawing defendant's guilty pleas on any basis other than a

5  claim and finding that entry into this plea agreement was

6  involuntary, then (a) the USAO will be relieved of all of its

7  obligations under this agreement; and (b) should the USAO choose to

8  pursue any charge that was not filed as a result of this agreement,

9  then (i) any applicable statute of limitations will be tolled between

10 the date of defendant's signing of this agreement and the filing

11 commencing any such action; and (ii) defendant waives and gives up

12 all defenses based on the statute of limitations, any claim of pre-

13 indictment delay, or any speedy trial claim with respect to any such

14 action, except to the extent that such defenses existed as of the

15 date of defendant's signing this agreement.

16

EFFECTIVE DATE OF AGREEMENT

17     26.  This agreement is effective upon signature and execution of

18 all required certifications by defendant, defendant's counsel, and an

19 Assistant United States Attorney.

20

BREACH OF AGREEMENT

21     27.  Defendant agrees that if defendant, at any time after the

22 signature of this agreement and execution of all required

23 certifications by defendant, defendant's counsel, and an Assistant

24 United States Attorney, knowingly violates or fails to perform any of

25 defendant's obligations under this agreement ("a breach"), the USAO

26 may declare this agreement breached.  All of defendant's obligations

27 are material, a single breach of this agreement is sufficient for the

28 USAO to declare a breach, and defendant shall not be deemed to have

cured a breach without the express agreement of the USAO in writing. If the USAO declares this agreement breached, and the Court finds such a breach to have occurred, then: (a) if defendant has previously entered guilty pleas pursuant to this agreement, defendant will not be able to withdraw the guilty pleas, and (b) the USAO will be relieved of all its obligations under this agreement.

28.  Following the Court's finding of a knowing breach of this agreement by defendant, should the USAO choose to pursue any charge that was either dismissed or not filed as a result of this agreement, then:

a.  Defendant agrees that any applicable statute of limitations is tolled between the date of defendant's signing of this agreement and the filing commencing any such action.

b.  Defendant waives and gives up all defenses based on the statute of limitations, any claim of pre-indictment delay, or any speedy trial claim with respect to any such action, except to the extent that such defenses existed as of the date of defendant's signing this agreement.

c.  Defendant agrees that: (i) any statements made by defendant, under oath, at the guilty plea hearing (if such a hearing occurred prior to the breach); (ii) the agreed to factual basis statement in this agreement; and (iii) any evidence derived from such statements, shall be admissible against defendant in any such action against defendant, and defendant waives and gives up any claim under the United States Constitution, any statute, Rule 410 of the Federal Rules of Evidence, Rule 11(f) of the Federal Rules of Criminal Procedure, or any other federal rule, that the statements or any

evidence derived from the statements should be suppressed or are inadmissible.

### COURT AND UNITED STATES PROBATION AND PRETRIAL SERVICES OFFICE NOT PARTIES

29.  Defendant understands that the Court and the United States Probation and Pretrial Services Office are not parties to this agreement and need not accept any of the USAO's sentencing recommendations or the parties' agreements to facts or sentencing factors.

30.  Defendant understands that both defendant and the USAO are free to: (a) supplement the facts by supplying relevant information to the United States Probation and Pretrial Services Office and the Court, (b) correct any and all factual misstatements relating to the Court's Sentencing Guidelines calculations and determination of sentence, and (c) argue on appeal and collateral review that the Court's Sentencing Guidelines calculations and the sentence it chooses to impose are not error, although each party agrees to maintain its view that the calculations in paragraph 18 are consistent with the facts of this case.  While this paragraph permits both the USAO and defendant to submit full and complete factual information to the United States Probation and Pretrial Services Office and the Court, even if that factual information may be viewed as inconsistent with the facts agreed to in this agreement, this paragraph does not affect defendant's and the USAO's obligations not to contest the facts agreed to in this agreement.

31.  Defendant understands that even if the Court ignores any sentencing recommendation, finds facts or reaches conclusions different from those agreed to, and/or imposes any sentence up to the

maximum established by statute, defendant cannot, for that reason, withdraw defendant's guilty pleas, and defendant will remain bound to fulfill all defendant's obligations under this agreement.  Defendant understands that no one -- not the prosecutor, defendant's attorney, or the Court -- can make a binding prediction or promise regarding the sentence defendant will receive, except that it will be between the statutory mandatory minimum and the statutory maximum.

<u>NO ADDITIONAL AGREEMENTS</u>

32.  Defendant understands that, except as set forth herein, there are no promises, understandings, or agreements between the USAO and defendant or defendant's attorney, and that no additional promise, understanding, or agreement may be entered into unless in a writing signed by all parties or on the record in court.

///

///

///

///

PLEA AGREEMENT PART OF THE GUILTY PLEA HEARING

33.   The parties agree that this agreement will be considered part of the record of defendant's guilty plea hearing as if the entire agreement had been read into the record of the proceeding.

AGREED AND ACCEPTED

UNITED STATES ATTORNEY'S OFFICE
FOR THE CENTRAL DISTRICT OF
CALIFORNIA

STEPHANIE S. CHRISTENSEN
Acting United States Attorney

_____                    8/30/2022
BYRON R. TUYAY                                        _____
Assistant United States Attorney                     Date
Riverside Branch Office

_____                    8/29/22
KENNETH ANDREW LATHON                                _____
Defendant                                            Date

_____                    08//30/22
JENAE MCDONALD                                       _____
Attorney for Defendant                               Date
KENNETH ANDREW LATHON

## CERTIFICATION OF DEFENDANT

I have read this agreement in its entirety. I have had enough time to review and consider this agreement, and I have carefully and thoroughly discussed every part of it with my attorney. I understand the terms of this agreement, and I voluntarily agree to those terms. I have discussed the evidence with my attorney, and my attorney has advised me of my rights, of possible pretrial motions that might be filed, of possible defenses that might be asserted either prior to or at trial, of the sentencing factors set forth in 18 U.S.C. § 3553(a), of relevant Sentencing Guidelines provisions, and of the consequences of entering into this agreement. No promises, inducements, or representations of any kind have been made to me other than those contained in this agreement. No one has threatened or forced me in any way to enter into this agreement. I am satisfied with the representation of my attorney in this matter, and I am pleading guilty because I am guilty of the charges and wish to take advantage of the promises set forth in this agreement, and not for any other reason.

_____          8/29/22
KENNETH ANDREW LATHON                   Date
Defendant

18

CERTIFICATION OF DEFENDANT'S ATTORNEY

I am Kenneth Andrew Lathon's attorney.  I have carefully and thoroughly discussed every part of this agreement with my client. Further, I have fully advised my client of his rights, of possible pretrial motions that might be filed, of possible defenses that might be asserted either prior to or at trial, of the sentencing factors set forth in 18 U.S.C. § 3553(a), of relevant Sentencing Guidelines provisions, and of the consequences of entering into this agreement. To my knowledge: no promises, inducements, or representations of any kind have been made to my client other than those contained in this agreement; no one has threatened or forced my client in any way to enter into this agreement; my client's decision to enter into this agreement is an informed and voluntary one; and the factual basis set forth in this agreement is sufficient to support my client's entry of guilty pleas pursuant to this agreement.

_Jenae McDonald_ _____          08/30/22
JENAE MCDONALD                                     Date
Attorney for Defendant
KENNETH ANDREW LATHON

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>          Plaintiff,<br><br>          v.<br><br>KENNETH ANDREW LATHON,<br><br>          Defendant. | ED CR No. 22-<br><br>I N F O R M A T I O N<br><br>[18 U.S.C. § 1349: Conspiracy to Commit Mail and Wire Fraud; 18 U.S.C. § 1028A(a)(1): Aggravated Identity Theft; 18 U.S.C. § 922(g)(1): Felon in Possession of Firearms; 18 U.S.C. § 981(a)(1)(C), 18 U.S.C. § 924(d)(1), and 28 U.S.C. § 2461(c): Criminal Forfeiture] |

The Acting United States Attorney charges:

COUNT ONE

[18 U.S.C. § 1349]

A.   INTRODUCTORY ALLEGATIONS

At times relevant to this Information:

1.   Defendant KENNETH ANDREW LATHON was a resident of Moreno Valley, California.

2.   Beginning no later than 2014, and continuing to the present, defendant LATHON's spouse, Co-conspirator 1, operated at

least three businesses involved in providing tax preparation services to the public: Miracle Tax Services, Hardcore Corporation (doing business as "Hardcore Taxes"), and Lathon LLC (doing business as "LL Taxes").  Individuals seeking tax preparation services from Co-Conspirator 1 provided her with their personal identifying information ("PII"), including their names, dates of birth, and social security numbers.

3.  California's Employment Development Department ("EDD") was the administrator of the unemployment insurance ("UI") benefit program for the State of California.

4.  On March 13, 2020, the President of the United States declared COVID-19 an emergency under the Robert T. Stafford Disaster Relief and Emergency Assistance Act.  As a result, Congress passed the Coronavirus Aid, Relief, and Economic Security Act ("CARES Act"), which the President signed into law on March 27, 2020.  The CARES Act provided over $2 trillion in economic relief protections to the American people from the public health and economic impacts of COVID-19.

5.  Prior to the enactment of the CARES Act, to be eligible for UI administered by EDD, a person had to have been employed and worked in California and received at least a certain amount of wages from an employer in the 18 months preceding his/her UI benefits claim. Because of this requirement, self-employed workers, independent contractors, and employees with insufficient earnings were not eligible to receive regular UI benefits.

6.  The CARES Act established a new program – Pandemic Unemployment Assistance ("PUA") -- to provide unemployment benefits during the COVID-19 pandemic to people who did not qualify for

regular unemployment insurance benefits, including business owners, self-employed workers, independent contractors, and those with limited work history who were out of business or had significantly reduced their services as a direct result of the pandemic.  UI benefits provided under the PUA program were sometimes referred to as PUA benefits.

7.   Under the PUA provisions of the CARES Act, a person who was a business owner, self-employed worker, independent contractor, or gig worker could qualify for PUA benefits administered by EDD if he/she previously performed such work in California and was unemployed, partially unemployed, unable to work, or unavailable to work due to a COVID-19-related reason.

8.   Persons applying for PUA benefits did not need to submit any supporting documents to EDD with their applications.  Claimants entered their total income for the 2019 calendar year on the application.  The stated income was used to pay the minimum benefits of $167 per week.  EDD could request documentation to provide proof of the stated income.

9.   A PUA claimant was required to answer various questions to establish his/her eligibility for PUA benefits.  The claimant was required to provide his/her name, social security number, and mailing address.  The claimant was also required to identify a qualifying occupational status and COVID-19 related reason for being out of work.

10.  After it accepted a UI claim, including a claim submitted pursuant to the PUA program, EDD typically deposited UI funds every two weeks to an Electronic Benefit Payment ("EBP") debit card administered by Bank of America ("BofA"), which the claimant could

1  use to pay for his/her expenses.  The EBP debit card was mailed via

2  the United States Postal Service to the claimant at the address the

3  claimant provided in his/her UI application.

4  B.   THE OBJECTS OF THE CONSPIRACY

5      Beginning no later than on or about February 2, 2020, and

6  continuing through at least on or about March 23, 2021, in Riverside

7  County within the Central District of California, and elsewhere,

8  defendant LATHON and his spouse, Co-conspirator 1, together with

9  others known and unknown to the Acting United States Attorney,

10  knowingly and with intent to defraud, conspired to commit offenses

11  against the United States, namely, mail fraud, in violation of Title

12  18, United States Code, Section 1341, and wire fraud, in violation of

13  Title 18, United States Code, Section 1343.

14  C.   THE MANNER AND MEANS OF THE CONSPIRACY

15      11.  The objects of the conspiracy were carried out, and were to

16  be carried out, in substance, as follows:

17          a.   Defendant LATHON and Co-conspirator 1 filed and caused

18  the filing with EDD of fraudulent applications for UI benefits that

19  falsely asserted the named claimants were self-employed independent

20  contractors who had been negatively affected by the COVID-19

21  pandemic, thereby triggering eligibility for UI benefits under the

22  PUA provision of the CARES Act.  In some instances, Co-conspirator 1

23  submitted fraudulent applications for UI benefits using names, social

24  security numbers and dates of birth that they obtained from former

25  clients of Co-conspirator 1's tax preparation businesses without the

26  permission of those former clients.  Co-conspirator 1 also paid

27  others in exchange for third parties' names, dates of birth, and

28  social security numbers to use on EDD applications.  In all

instances, defendant LATHON knew that Co-Conspirator 1 submitted the applications using others' PII intending to secure the benefits for defendant LATHON, Co-Conspirator 1, and their co-conspirators by having the EBP debit cards mailed to addresses that defendant LATHON and Co-conspirator 1 could collect mail.

b.   In some instances, Co-conspirator 1 falsely asserted and caused to be asserted on the UI applications submitted in furtherance of the conspiracy that the claimants were residents of California entitled to UI benefits administered by EDD when, in fact, they were not, and defendant LATHON knew they were not.

c.   In some instances, Co-conspirator 1 falsely asserted and caused to be asserted inflated income for the named claimants on their applications in order to receive the maximum benefit amount.

d.   In some instances, Co-conspirator 1 and other co-conspirators made up and caused to be made up the occupation that was listed for the named claimant on the application.

e.   To the contrary, and as defendant LATHON then well knew, many of the persons named as claimants on the applications Co-conspirator 1 filed and caused to be filed had no residential history in the State of California and/or had not been employed in the occupations that Co-conspirator 1 reported and caused to be reported on the UI benefits applications she submitted and caused to be submitted in the names of the named claimants.

f.   By falsely asserting that the claimants had worked in the State of California as independent contractors who had lost work because of COVID-19, Co-conspirator 1 falsely represented and caused to be falsely represented that the named claimants were entitled to

UI benefits administered by EDD when, as defendant LATHON then knew, they were not.

g.   As a result of the fraudulent UI benefit claims that defendant Co-conspirator 1 filed and caused to be filed, EDD authorized BofA to issue EBP debit cards in the names of the named claimants.  Defendant LATHON knew that the applications Co-Conspirator 1 submitted would cause BofA to mail EBP debit cards issued to the named claimants via the United States Postal Service to the addresses defendant Co-conspirator 1 provided on the fraudulent UI claim applications, including addresses that defendant LATHON and his co-conspirators controlled.

h.   Defendant LATHON and Co-conspirator 1 would use the EBP debit cards, or direct others to use the EBP debit cards, to make cash withdrawals at automated teller machines ("ATMs") and to make purchases at retail stores, both types of transactions involved wire communication in interstate commerce.

i.   Through this conspiracy, defendant LATHON and Co-conspirator 1 caused at least 44 fraudulent PUA claims to be filed, resulting in losses to EDD and the United States Treasury of approximately $998,630.

D.   OVERT ACTS

12.   In furtherance of the conspiracy and to accomplish its objects, defendant LATHON, Co-conspirator 1, and other co-conspirators known and unknown to the Acting United States Attorney, committed, and willfully caused others to commit, various overt acts within the Central District of California, and elsewhere, including, but not limited to, the following:

<u>Overt Act No. 1:</u>   On August 26, 2020, defendant LATHON used the EBP debit card held in victim A.C.'s name to withdraw $1,000 from an ATM in Escondido, California.

<u>Overt Act No. 2:</u>   On September 7, 2020, defendant LATHON and Co-conspirator 1 used the EBP debit cards held in the names of victims L.L. and D.P. to withdraw $2,000 from an ATM in Upland, California.

1

COUNT TWO

2

[18 U.S.C. § 1028A(a)(1)]

3      On or about August 24, 2020, in the County of Orange, within the

4  Central District of California, and elsewhere, defendant KENNETH

5  ANDREW LATHON knowingly possessed and used, without lawful authority,

6  means of identification that defendant LATHON knew belonged to

7  another person, namely, the name of A.C., during and in relation to

8  the offense of Conspiracy to Commit Mail Fraud and Wire Fraud, a

9  felony in violation of Title 18, United States Code, Section 1349, as

10  charged in Count One of this Information.

COUNT THREE

[18 U.S.C. § 922(g)(1)]

On or about March 23, 2021, in Riverside County, within the Central District of California, defendant KENNETH ANDREW LATHON knowingly possessed the following firearms, in and affecting interstate and foreign commerce:

13.   a Remington, Mohawk 10C, .22 caliber rifle bearing serial number 2452183; and

14.   a Mossberg, 500 ATP, 12-gauge shotgun with an attached ammunition saddle, bearing no identifiable serial number.

Defendant LATHON possessed such firearms knowing that he had previously been convicted of at least one of the following felony crimes, each punishable by a term of imprisonment exceeding one year:

1.   Receiving Stolen Property, in violation of California Penal Code Section 496(a) and Possession of a Completed Check with Intent to Defraud, in violation of California Penal Code Section 475(a), in the Superior Court of California, County of Orange, case number SH975F0412, on or about May 8, 1997;

2.   Possession of Cocaine, in violation of California Penal Code Section 11350(a), in the Superior Court of California, County of Los Angeles, case number KA020702, on or about March 3, 1998; and

3.   Fraud to Obtain Aid by Misrepresentation, in violation of Welfare and Institutions Code Section 10980(c)(2), in the Superior Court of California, County of San Bernardino, case number FSB1104727, on or about May 16, 2012.

1                          FORFEITURE ALLEGATION ONE

2                 [18 U.S.C. § 981(a)(1)(C) and 28 U.S.C. § 2461(c)]

3        1.      Pursuant to Rule 32.2 of the Federal Rules of Criminal

4    Procedure, notice is hereby given that the United States of America

5    will seek forfeiture as part of any sentence, pursuant to Title 18,

6    United States Code, Section 981(a)(1)(C) and Title 28, United States

7    Code, Section 2461(c), in the event of any defendant's conviction of

8    the offenses set forth in Counts One or Two of this Information.

9        2.      Any defendant so convicted shall forfeit to the United

10   States of America the following:

11             (a)   All right, title, and interest in any and all

12   property, real or personal, constituting, or derived from, any

13   proceeds traceable to the offense; and

14             (b)   To the extent such property is not available for

15   forfeiture, a sum of money equal to the total value of the property

16   described in subparagraph (a).

17       3.      Pursuant to Title 21, United States Code, Section 853(p),

18   as incorporated by Title 28, United States Code, Section 2461(c), any

19   defendant so convicted shall forfeit substitute property, up to the

20   value of the property described in the preceding paragraph if, as the

21   result of any act or omission of said defendant, the property

22   described in the preceding paragraph or any portion thereof (a)

23   cannot be located upon the exercise of due diligence; (b) has been

24   transferred, sold to, or deposited with a third party; (c) has been

25   placed beyond the jurisdiction of the court; (d) has been

26   //

27   //

28

                                      10

substantially diminished in value; or (e) has been commingled with other property that cannot be divided without difficulty.

FORFEITURE ALLEGATION TWO

[18 U.S.C. § 924(d)(1) and 28 U.S.C. § 2461(c)]

1. Pursuant to Rule 32.2 of the Federal Rules of Criminal Procedure, notice is hereby given that the United States of America will seek forfeiture as part of any sentence, pursuant to Title 18, United States Code, Section 924(d)(1), and Title 28, United States Code, Section 2461(c), in the event of any defendant's conviction of the offense set forth Count Three of this Information.

2. Any defendant so convicted shall forfeit to the United States of America the following:

(a) All right, title, and interest in any firearm or ammunition involved in or used in any such offense, to include a Remington, Mohawk 10C, .22 caliber rifle bearing serial number 2452183 and a Mossberg, 500 ATP, 12-gauge shotgun with an attached ammunition saddle, bearing no identifiable serial number, and an unknown make AR-15 pattern rifle, bearing no serial number; and

(b) To the extent such property is not available for forfeiture, a sum of money equal to the total value of the property described in subparagraph (a).

3. Pursuant to Title 21, United States Code, Section 853(p), as incorporated by Title 28, United States Code, Section 2461(c), the convicted defendant shall forfeit substitute property, up to the value of the property described in the preceding paragraph if, as the result of any act or omission of said defendant, the property described in the preceding paragraph or any portion thereof (a) cannot be located upon the exercise of due diligence; (b) has been transferred, sold to, or deposited with a third party; (c) has been placed beyond the jurisdiction of the court;

12

1

2 (d) has been substantially diminished in value; or (e) has been

3 commingled with other property that cannot be divided without

4 difficulty.

5                                    STEPHANIE S. CHRISTENSEN
                                     Acting United States Attorney
6

7

8                                    SCOTT M. GARRINGER
                                     Assistant United States Attorney
9                                    Chief, Criminal Division

10                                   SEAN D. PETERSON
                                     Assistant United States Attorney
11                                   Chief, Riverside Branch Office

12                                   BYRON R. TUYAY
                                     Assistant United States Attorney
13                                   Riverside Branch Office

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

DocuSign Envelope ID: 5677ZDDC-1C70-4D66-AC83-C0D137EB7C1B

**EXHIBIT B**

**STATEMENT OF FACTS IN SUPPORT OF PLEA AGREEMENT**

Kenneth Andrew Lathon ("defendant") represents and admits that the following facts are true:

**Background on Unemployment Insurance Program**

At all times relevant to the charge in the Information:

a. Defendant was a resident of Moreno Valley, California.

b. Beginning no later than 2014 to the present, defendant's spouse, Co-conspirator 1, operated at least three businesses involved in providing tax preparation services to the public: Miracle Tax Services, Hardcore Corporation (doing business as "Hardcore Taxes"), and Lathon LLC (doing business as "LL Taxes"). Individuals seeking tax preparation services from Co-conspirator 1's businesses provided her with their personal identifying information ("PII") including their names, dates of birth, and social security numbers.

c. California's Employment Development Department ("EDD") was the administrator of the unemployment insurance ("UI") benefit program for the State of California.

d. On March 13, 2020, the President of the United States declared COVID-19 an emergency under the Robert T. Stafford Disaster Relief and Emergency Assistance Act. As a result, Congress passed the Coronavirus Aid, Relief, and Economic Security Act ("CARES Act"), which the President signed into law on March 27, 2020. The CARES Act provided over $2

trillion in economic relief protections to the American people from the public health and economic impacts of COVID-19.

      e.   Prior to the enactment of the CARES Act, to be eligible for UI administered by EDD, a person had to have been employed and worked in California and received at least a certain amount of wages from an employer in the 18 months preceding his/her UI benefits claim.  Because of this requirement, self-employed workers, independent contractors, and employees with insufficient earnings were not eligible to receive regular UI benefits.

      f.   The CARES Act established a new program – Pandemic Unemployment Assistance ("PUA") –– to provide unemployment benefits during the COVID-19 pandemic to people who did not qualify for regular unemployment insurance benefits, including business owners, self-employed workers, independent contractors, and those with limited work history who were out of business or had significantly reduced their services as a direct result of the pandemic.  UI benefits provided under the PUA program are sometimes referred to as PUA benefits.

      g.   Under the PUA provisions of the CARES Act, a person who was a business owner, self-employed worker, independent contractor, or gig worker could qualify for PUA benefits administered by EDD if he/she previously performed such work in California and was unemployed, partially unemployed, unable to work, or unavailable to work due to a COVID-19-related reason.

h.   Persons applying for PUA benefits did not need to
submit any supporting documents to EDD with their applications.
Claimants entered their total income for the 2019 calendar year
on the application.  The stated income was used to pay the
minimum benefits of $167 per week.  EDD could request
documentation to provide proof of the stated income.

i.   A PUA claimant was required to answer various
questions to establish his/her eligibility for PUA benefits.
The claimant was required to provide his/her name, Social
Security Number, and mailing address.  The claimant was also
required to identify a qualifying occupational status and COVID-
19 related reason for being out of work.

j.   After it accepted a UI claim, including a claim
submitted pursuant to the PUA program, EDD typically deposited
UI funds every two weeks to an Electronic Benefit Payment
("EBP") debit card administered by Bank of America ("BofA"),
which the claimant could use to pay for his/her expenses.  The
EBP debit card was mailed via the United States Postal Service
to the claimant at the address the claimant provided in his/her
UI application.

**Defendant's Conspiracy to Defraud EDD**

k.   Beginning no later than February 2, 2020, and
continuing through at least March 23, 2021, in Riverside County
within the Central District of California, and elsewhere,
defendant had an agreement with his spouse Co-conspirator 1 and
others, to knowingly and with the intent to defraud, commit
offenses against the United States, namely, defendant and his

3

DocuSign Envelope ID: 5677ZDDC-1620-4D66-AC83-C0D137EB7C1B

co-conspirators devised, participated in, and executed a scheme to fraudulently obtain UI benefits, including PUA benefits from EDD and the United States Treasury by submitting applications for UI benefits using the names, dates of birth and social security numbers of third parties and fictitious employment information.

Defendant knew that Co-conspirator 1 filed and caused the filing with EDD of fraudulent applications for UI benefits, which falsely asserted the named claimants were self-employed independent contractors who were negatively affected by the COVID-19 pandemic, triggering eligibility for UI benefits under the PUA provision of the CARES Act. Defendant knew that Co-conspirator 1 obtained some of the PII used to submit the fraudulent claims through her prior work as a tax preparer without permission to use the PII of her former clients. Defendant and Co-conspirator 1 also offered to pay others in exchange for third parties' PII to use on EDD applications. In all instances, defendant LATHON knew that Co-conspirator 1 submitted the applications using others' PII intending to secure the benefits for himself and their family by having the EBP debit cards mailed to addresses where he and Co-conspirator 1 could collect mail.

Defendant understood that the UI applications that Co-conspirator 1 submitted, falsely asserted and caused to be asserted in furtherance of the conspiracy that the claimants were residents of California entitled to UI benefits administered by EDD when, in fact, they were not, and defendant

DocuSign Envelope ID: 5G77ZDDC-1G70-4D66-AC83-C0D137EB7C1B

knew they were not. Defendant understood that the UI applications submitted by Co-conspirator 1 were based on fictitious information including employment histories, mailing addresses, e-mail accounts, and phone numbers.

As a result of the fraudulent UI benefit applications defendant and Co-conspirator 1 filed and caused to be filed, EDD authorized BofA to issue EBP cards in the names of the named claimants. Defendant knew that the UI applications would cause BofA to mail EBP debit cards issued to the named claimants via the United States Postal Service to the addresses Co-conspirator 1 provided on the fraudulent UI claim applications, including addresses where defendant and Co-conspirator 1 knew that they could collect mail.

Defendant and his co-conspirators would use, or direct others to use, the EBP debit cards to make cash withdrawals at automated teller machines ("ATMs") and to make purchases at retail stores, both types of transactions involved wire communication in interstate commerce.

Through this conspiracy, defendant and Co-conspirator 1 caused at least 44 fraudulent PUA claims to be filed resulting in losses to EDD and the United States Treasury of approximately $998,630.

In furtherance of the conspiracy and to accomplish its objects, defendant committed various overt acts within the Central District of California, and elsewhere, including, but not limited to, the following:

On August 26, 2020, defendant used the EBP debit card held in victim A.C.'s name to withdraw $1,000 from an ATM in Escondido, California.

On September 7, 2020, defendant and Co-conspirator 1 used the EBP debit cards held in the names of victims L.L. and D.P. to withdraw $2,000 from an ATM in Upland, California.

Furthermore, on or about August 24, 2020, defendant knowingly possessed and used, an EBP debit card in opened in the name of victim A.C., to withdrawal $1,000 from an ATM in Brea, California, in the County of Orange, during and in relation to the conspiracy to defraud EDD.  At the time defendant used the name of victim A.C., defendant knew that A.C. was a real person.

**Defendant's Unlawful Firearms Possession**

On March 23, 2021, while executing a search warrant at defendant's residence in Moreno Valley, Riverside County, agents found the following items:

- a Remington, Mohawk 10C, .22 caliber rifle bearing serial number 2452183; and

- a Mossberg, 500 ATP, 12-gauge shotgun with an attached ammunition saddle.

These items belonged to defendant; he knew where they were located and he had the power and intention to control them.

The firearms seized from defendant on March 23, 2021, had been manufactured outside the State of California.  Accordingly, at the time defendant possessed firearms, they had previously travelled across an interstate or international border.

When defendant possessed firearms on March 23, 2021,

6

defendant knew that he had been convicted of the following felony crimes, and he knew that each was punishable by imprisonment for a term exceeding one year:

Receiving stolen property, in violation of California Penal Code Section 496(a) and Possession of a Completed Check with Intent to Defraud, in violation of California Penal Code Section 475(a), in the Superior Court of California, County of Orange, case number SH975F0412, on or about May 8, 1997;

Possession of cocaine, in violation of California Penal Code Section 11350(a), in the Superior Court of California, County of Los Angeles, case number KA020702, on or about March 3, 1998; and

Fraud to Obtain Aid by Misrepresentation, in violation of Welfare and Institutions Code Section 10980(c)(2), in the Superior Court of California, County of San Bernardino, case number FSB1104727, on or about May 16, 2012.

DocuSign Envelope ID: 5677ZDDC-1C70-4D66-AC83-C0D137EB7C1B

I have read this STATEMENT OF FACTS IN SUPPORT OF PLEA AGREEMENT in its entirety.  I have had enough time to review this statement of facts and I have carefully and thoroughly discussed every part of it with my attorney.  I agree that this statement of facts is sufficient to support pleas of guilty to the charges described in the plea agreement and to establish the Sentencing Guidelines factors set forth in paragraph 18 of the plea agreement.

___KENNETH A LATHON_____          9/1/2022
KENNETH ANDREW LATHON                          Date
Defendant


I am KENNETH ANDREW LATHON's attorney.  I have carefully and thoroughly discussed every part of this statement of facts with my client and agree that it is sufficient to support pleas of guilty to the charges described in the plea agreement and to establish the Sentencing Guidelines factors set forth in paragraph 18 of the plea agreement.

___Jenae McDonald_____          09/01/22
JENAE MCDONALD                          Date
Attorney for Defendant
KENNETH ANDREW LATHON

### CERTIFICATE OF SERVICE

I am a citizen of the United States and a resident of Riverside County, California.  I am over 18 years of age, and I am not a party to the above-entitled action.  My business address is the United States Attorney's Office, 3403 Tenth Street, Suite 200, Riverside, California 92501.

On this date, September 30, 2022 I served a copy of the following entitled document(s) PLEA AGREEMENT

as follows:

☐      by placing the document in a sealed envelope, addressed to the person specified below, and placing it for interoffice delivery within the courthouse:

■      by e-mailing a pdf. version of the document to the e-mail address specified below:

☐      by placing the document in a sealed envelope, addressed to the person specified below, and placing it for U.S. mail delivery:

**Jenae McDonald**
**jenae@dre.law**

___

I declare under penalty of perjury that the foregoing is true and correct.  Executed on, September 30, 2022 at Riverside, California.

/s/ _____
Brenda Tovar